UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JASON DREYER,

        Plaintiff,

v.                                                        Case Number 05-10285-BC
                                                        Honorable Thomas L. Ludington

EXEL INDUSTRIES, INC.; KREMLIN, INC.;
KREMLIN-REXSON S.A.; EXEL NORTH
AMERICA, INC.; EXEL INDUSTRIAL, INC.,
        Defendants.
_____/

## **ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION**

On June 10, 2008, the Court issued an order and opinion granting motions for summary judgment filed by Defendants Exel North American, Inc.; Exel Industrial, Inc.; and Kremlin, Inc. ("American Defendants") and by Defendants Exel Industries, S.A. and Kremlin-Rexson, S.A. ("French Defendants"). The case involves an explosion that occurred in conjunction with Plaintiff Jason Dreyer's use of a paint sprayer. On June 20, 2008, he timely filed a motion for reconsideration under E.D. Mich. LR 7.1(g).

E.D. Mich. LR 7.1(g) permits a party to seek reconsideration of an order. Local Rule 7.1(g)(3) provides:

> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case.

Plaintiff appears to advance four arguments in his motion for reconsideration. Regarding American Defendants, he objects that the Court did not evaluate his claims of a negligent failure to

warn or of breach of an implied warranty. Regarding French Defendants, he challenges the Court's conclusion that he has not rebutted the evidence that the paint sprayer, which French Defendants manufactured, was not a proximate cause of the explosion. Plaintiff further maintains that the Court should conclude that American Defendants are but a division of French Defendants, although he designates this argument as one to pierce the corporate veil.[1]

In his arguments about claims of a negligent failure to warn and of a breach of an implied warranty, Plaintiff largely focuses his attention on three decisions: *Bouverette v. Westinghouse Electrical Corp.*, 628 N.W.2d 86, 90 (Mich. Ct. App. 2001), *Ludwig v. Dick Martin Sports, Inc.*, Unpublished Decision, Case No. 242758; 2003 Mich. App. LEXIS 2941 (Mich. Ct. App. 2003), and *Grostic v. AGCO Corp.*, 2003 Mich. App. LEXIS 50 (Mich. Ct. App. 2003). In *Bouverette*, the court reiterated that "the adequacy of a warning is an issue of reasonableness, and reasonableness is a question of fact." In *Ludwig*, the court outlined the legal framework for assessing these two types of claims and stated that when a claim rests on allegedly inadequate warnings, regardless of which theory a plaintiff advances, "the standard is the same: warnings are examined with regard to their reasonableness under the circumstances." *Ludwig*, 2003 Mich. App. LEXIS 2941 at *8 (citations omitted). Yet there, the defendant provided no warnings at all about an allegedly dangerous design feature in its product. Apart from the general instruction that *Ludwig* provides regarding these types of claims, it is not obvious what guidance that decision provides for Plaintiff's particular claims, where the product did come with manuals that Plaintiff acknowledged reading.

---

[1] Plaintiff leaves unclear whether he seeks to pierce the corporate veil of American Defendants or French Defendants.

As to *Grostic*, Plaintiff cites to that decision in this motion regarding principles governing failure to warn cases, i.e. issues that receive discussion in that case. In his previous filings in response to Defendants' motions for summary judgment, he relied on *Grostic* to argue that liability should attach to a non-manufacturing distributor, even though that case does not address that issue. Consequently, his attempt to demonstrate an error involving citation to *Grostic* in the Court's earlier order is unavailing.

Equally important, Plaintiff offers the afore-mentioned analysis in an effort to fashion his claim to qualify for an exception to Michigan's limitation on liability for non-manufacturing sellers. *See* Mich. Comp. Laws § 600.2947(6) ("In a product liability action, a seller other than a manufacturer is not liable for harm allegedly caused by the product . . . ."). This statutory provision formed the basis for the Court's dismissal of his claims against American Defendants, not a substantive conclusion about the reasonableness of the warnings used or whether the paint sprayer was fit for use, given the warnings that accompanied it.

Mich. Comp. Laws § 600.2947(6)(a) does provide an exception to the general bar on liability for non-manufacturing sellers, in the event that "[t]he seller failed to exercise reasonable care, including breach of any implied warranty, with respect to the product and that failure was a proximate cause of the person's injuries." Michigan courts have not yet provided precise guidance on the extent of this exception, or how to interpret the exception within the statute in a manner that does not swallow the statutory bar. *See Adams v. Meijer, Inc.*, 2001 Mich. App. LEXIS 298 (Mich. Ct. App. 2001); *Hastings Mutual Ins. v. General Motors Corp.*, 2005 Mich. App. LEXIS 849 (Mich. Ct. App. 2005). Following a careful survey of state and federal court decisions regarding the exceptions under Mich. Comp. Laws § 600.2947(6), the district court in *Konstantinov v. Findlay*

*Ford Lincoln Mercury*, 2008 U.S. Dist. LEXIS 5793, *14 (E.D. Mich. 2008), interpreted the statute's reference to a "failure to exercise reasonable care" to mean that a plaintiff must show that a non-manufacturing seller knew or had reason to know of an alleged defect in the product sold. More generally, a plaintiff must show evidence of independent negligence, which would comport with the statutory limitation on product liability claims against any participant in a product distribution chain and require a specific demonstration of negligence by a distributor.

Here, Plaintiff has not proffered any evidence to support a conclusion that American Defendants knew or had reason to know of allegedly deficient warnings or that American Defendants implied the existence of any warranty for the paint sprayer. The defects alleged by Plaintiff may have a connection to French Defendants, but he has not linked any purported defect to American Defendants' conduct (or failure to act), sufficient to meet the exception to the general limitation on liability for non-manufacturing sellers. Additionally, for reasons discussed in the opinion and order of June 10, 2008[2] and reiterated below as to French Defendants, Plaintiff has not demonstrated that the warnings accompanying the paint sprayer were a proximate cause of his injuries. Accordingly, assuming, *arguendo*, that error occurred in applying the general bar for liability for non-manufacturing sellers, Plaintiff has not shown the likelihood of a different disposition under E.D. Mich. LR 7.1(g).

Regarding French Defendants, Plaintiff contends that the Court erred in its analysis of causation, a necessary element in a failure to warn claim. *See Tasca v. GTE Products Corp.*, 438

---

[2]Further, Plaintiff does not offer supporting evidence that American Defendants manufactured the product, despite again inviting the Court to hold them accountable for the content of warnings included in manuals issued by French Defendants. Thus, Plaintiff does not succeed in showing that American Defendants are manufacturers, such that Mich. Comp. Laws § 600.2947(6) does not apply to them.

N.W.2d 625, 627 (Mich. Ct. App. 1988). To advance his argument, Plaintiff posits several alternative events that, he believes, would have prevented an explosion from occurring. He states:

> A spark never would have ignited the vapors if Defendants had (1) warned Plaintiff to use an explosion proof plug as required by [another] manual, (2) warned Plaintiff against using a power strip, (3) provided definitions in the manual of how much ventilation is required, (4) provided a definition of flash point and a specific range of flash points that were safe to use under the conditions set forth in the manual, and/or (5) provided the conditions required to use [methyl ethyl ketone ("MEK")].

Pl. Recon. Br., pp. 16-17 [dkt #181]. Notably, none of the warnings that Plaintiff requests pertain to the use of French Defendants' paint sprayer to apply paint. Each of these scenarios supposes the use of two other products: a power strip and a highly flammable solvent, MEK. As stated in the initial opinion, Plaintiff provides no basis for disputing the conclusions of the fire marshal and the investigator for Plaintiff's employer's insurer. They both determined that the significant facts that resulted in the explosion were the presence of MEK vapors, the degree of ventilation for those vapors, the use of the power strip, and Plaintiff's act of switching off the power strip. Plaintiff's contention that his proposed expert would fault French Defendants for not anticipating and warning a purchaser of the paint sprayer against the combined use of a power strip and MEK underscores the point – Plaintiff has not provided contrary evidence to relate French Defendants' product to the explosion that occurred.

Finally, Plaintiff argues that the Court should conclude that American Defendants are but a division of French Defendants. Here, he presents a reiteration of the same arguments already addressed by the Court. He again refers to his version of the ownership structure of American Defendants, a manual that directed users of the paint sprayer to contact the distributor for assistance, a staff to support those inquiries, and the signature line in an e-mail. Apart from a rhetorical

question about the twelve people dedicated to the support staff, Plaintiff provides no additional factual or legal basis for concluding that American Defendants are a division of French Defendants. While he may be correct in his belief about their interconnectedness, Plaintiff has not presented the Court with evidence to so conclude, despite a lengthy period for discovery.

Accordingly, it is **ORDERED** that Plaintiff's motion for reconsideration [dkt #181] is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: August 11, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 11, 2008.

s/Tracy A. Jacobs
TRACY A. JACOBS